UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Ryan Thompson, | Case No. 19-cv-1559 (DSD/TNL) |
| Plaintiff, | |
| v. | **REPORT & RECOMMENDATION** |
| Janell Hussain, *Medical Provider at the Sherburne County Jail*, Mend Correctional Care, Sherburne County Jail Staff, Joel Blott,[1] *Sheriff of Sherburne County*, Patrick Carr, *Commander of the Sherburne County Jail*, Diana VanDerBeek, *Nursing Director, at the Sherburne County Jail*, and Mend Medical Services, | |
| Defendants. | |

Ryan Thompson, Reg. #21609-041, FCI-Butner Medium II, P.O. Box 1500, Butner, NC 27509 (pro se Plaintiff);

Anthony J. Novak and Bradley R. Prowant, Larson King, LLP, 30 East Seventh Street, Suite 2800, St. Paul, MN 55101-4922 (for the MEnD Defendants); and

Jason M. Hively and Stephanie A. Angolkar, Iverson Reuvers Condon, 9321 Ensign Avenue South, Bloomington, MN 55438 (for the County Defendants).

## I. INTRODUCTION

This matter is before the Court on Defendants Sherburne County Jail Staff, Sheriff Joel Brott, and Commander Patrick Carr's (collectively, "County Defendants") Motion to

---

[1] It appears that there may have been a typographical error in the spelling of Sheriff Brott's last name in the Plaintiff's pleadings. *See, e.g.*, County Defs.' Mem. at 1, ECF No. 27.

1

Dismiss, ECF No. 25, and Defendants Janell Hussain, MEnD Correctional Care, Diana VanDerBeek, and Mend Medical Services's[2] (collectively, "MEnD Defendants") Motion to Dismiss, ECF No. 31. These motions have been referred to the undersigned for a report and recommendation to the district court, the Honorable David S. Doty, District Judge for the United States District Court for the District of Minnesota, under 28 U.S.C. § 636 and D. Minn. LR 72.1. Based upon the record, memoranda, and proceedings herein, it is recommended that the motions to dismiss be granted and the Verified Complaint[3] be dismissed without prejudice. It is further recommended that Plaintiff be given an opportunity to file an amended complaint.

## II. BACKGROUND

This action concerns alleged inadequate medical care pro se Plaintiff Ryan Thompson received while at the Sherburne County Jail. At this stage of the proceedings, the Court assumes the truth of the factual allegations in the Verified Complaint. *See Johnson v. Precythe*, 954 F.3d 1098, 1101 (8th Cir. 2020) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

**A. Defendants**

Sheriff Brott, as his title suggests, "is the Sheriff of Sherburne County and . . . responsible for the overall operation of the Sheriff's Department which includes the

---

[2] Plaintiff has identified both "Mend Correctional Care" and "Mend Medical Services" as defendants in his pleadings. *See, e.g.*, ECF No. 1 at 1; Verified Complaint ¶ 7, ECF No. 1-1; *see also infra* n.3. The MEnD Defendants assert that "[t]he correct entity is MEnD Correctional Care"; "[t]he Minnesota Secretary of State has no record of a 'Mend Medical Services'"; and they are "aware of no such entity" by that name. MEnD Defs.' Mem. at 1 n.1, ECF No. 33.

[3] Plaintiff has submitted both a completed complaint form for actions brought pursuant to 42 U.S.C. § 1983, ECF No. 1, and a self-styled "Verified Complaint," ECF No. 1-1, containing his factual allegations and claims. The Court has construed these pleadings together as the "Verified Complaint."

2

Sherburne County Jail." Verified Compl. ¶ 3. Commander Carr, again as his title suggests, "is the Commander of the Sherburne County Jail and . . . directly responsible for the operation of the Sherburne County Jail." Verified Compl. ¶ 4.

MEnD Correctional Care is a "contractual medical provider" of "medical services to inmates at the Sherburne County Jail." Verified Compl. ¶ 7. Hussain and VanDerBeek are employed by MEnD Correctional Care. Verified Compl. ¶¶ 5, 6. Hussain is a nurse practitioner and VanDerBeek is "the Nursing Director." Verified Compl. ¶¶ 5, 6. Each provides medical services at the Sherburne County Jail. Verified Compl. ¶¶ 5, 6.

### B. Allegations in the Complaint

In or around October 2018, Plaintiff was confined at the Sherburne County Jail pending federal charges. Verified Compl. ¶¶ 2, 10. At some point prior to the events in question, Plaintiff suffered a gunshot wound. Verified Compl. ¶ 2. At the time of his arrival at the Sherburne County Jail, Plaintiff "was semi[-] mobile." Verified Compl. ¶ 2. "He is now confined to a wheelchair." Verified Compl. ¶ 2. Plaintiff also has "nerve damage." Verified Compl. ¶ 12.

While at the Sherburne County Jail, Plaintiff experienced difficulty with his medications, vision, and pain management. In or around the beginning of October, Hussain "refused to give Plaintiff his prescribed medications[,] which were gabapentin, amitriptyline, [a] muscle relaxer (methocarbinol [sic]), and hydrocodone," because he "arrived . . . with marijuana in his system." Verified Compl. ¶ 10. The marijuana had been prescribed by Plaintiff's regular treatment provider. Verified Compl. ¶ 10. Plaintiff

3

began experiencing blurry vision at some point in October. *See, e.g.*, Verified Compl. ¶¶ 11, 12, 13. Plaintiff believed that changes "in his medication doses, without proper examination, w[ere] making his vision worse." Verified Compl. ¶ 13.

Plaintiff continued to experience pain and trouble with his vision. *See, e.g.*, Verified Compl. ¶¶ 13-19. Plaintiff expressed concern "that permanent damage was occurring." Verified Compl. ¶ 14. In early December, Plaintiff's pain started to interfere with his ability to walk. Verified Compl. ¶ 17. "[T]he constant pain was causing depression." Verified Compl. ¶ 17.

In or around this time, the "jail staff incorrectly diagnosed Plaintiff with pink eye and placed [him] in a segregation cell." Verified Compl. ¶ 17. "Plaintiff was given antibiotics, which temporarily cleared up the issue." Verified Compl. ¶ 17. When "[t]he issue resurfaced, [however,] Plaintiff did not say anything as he was afraid that the jail would react by placing him in segregation." Verified Compl. ¶ 17 (footnote omitted).

Around the end of February 2019, "Plaintiff requested that he be allowed to have a chair in his room to elevate his leg." Verified Compl. ¶ 20.

In mid-April, Plaintiff "was sent . . . to an outside provider and . . . prescribed pain medication." Verified Compl. ¶ 21. "Defendants refused to provide" the medication. Verified Compl. ¶ 21; *see* Verified Compl. ¶ 22.

In approximately the last two weeks or so of April, Plaintiff's "nerve pain [was] spreading and affecting his sleep." Verified Compl. ¶ 22; *see* Verified Compl. ¶ 23. About the same time, Plaintiff's wheelchair was "taken," and he was "placed . . . in a sort of psychiatric segregation cell as directed by the Lieutenant." Verified Compl. ¶ 23.

4

Between October 24, 2018, and April 29, 2019, Plaintiff submitted at least 13 grievances regarding his medications, vision, and pain. Verified Compl. ¶¶ 11-23. In those grievances, Plaintiff expressed concern about his worsening condition and the lack of response to his grievances and requested further treatment. *See generally* Verified Compl. ¶¶ 11-23. In one grievance, Plaintiff expressed concern that "Hussain was in essence experimenting with him." Verified Compl. ¶ 18. In another, "Plaintiff referenced a meeting with . . . Hussain wherein she was indifferent to his legitimate issues and shifted blame to the United States Marshal for the lack of ability to treat [him]." Verified Compl. ¶ 19 (footnote omitted). In a later grievance, Plaintiff accused Hussain of changing his prescriptions "without consulting [him] or the outside providers (at times she would contact the providers, but would make her changes without first hearing back from them)." Verified Compl. ¶ 22.

### C. Claims

In Count 1, Plaintiff alleges that both the County and MEnD Defendants were deliberately indifferent to his medical needs. As for the County Defendants, Plaintiff alleges that Sheriff Brott "entered into the contract" with MEnD Correctional Care and both he and Commander Carr were "made personally aware" of Plaintiff's grievances and "refused to take corrective action." Verified Compl. ¶¶ 26-27. With respect to the MEnD Defendants, Plaintiff alleges that Hussain "directly oversaw [his] purported course of treatment" and VanDerBeek "worked in tandem with . . . Hussain regarding [his] purported course of treatment." Verified Compl. ¶¶ 28, 29.

In Count 2, Plaintiff alleges the MEnD Defendants committed "the state tort of

5

medical malpractice." Verified Compl. ¶¶ 31-32.

### D. Exhibits & Additional Allegations

Attached to Plaintiff's Verified Complaint were over 30 pages of exhibits consisting of grievances he submitted, responses to those grievances, and medical records. *See* ECF No. 1-2 at 18-55. Plaintiff subsequently filed over 70 additional pages of grievances, responses thereto, and medical records. *See* ECF No. 11 at 1-42, ECF No. 23 at 2-34. Soon after these motions to dismiss were filed, Plaintiff filed a document containing additional factual allegations. *See generally* ECF No. 36. Even more factual allegations are included in Plaintiff's opposition to the motions to dismiss. *See, e.g.*, Pl.'s Opp'n at 5, 7-9, ECF No. 45.

### III. ANALYSIS

The County and MEnD Defendants both move for dismissal of this action under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

### A. Legal Standard

"To withstand a Rule 12(b)(6) motion, a complaint must contain sufficient factual allegations to 'state a claim to relief that is plausible on its face.'" *Smithrud v. City of St. Paul*, 746 F.3d 391, 397 (8th Cir. 2014) (quoting *Twombly*, 550 U.S. at 547). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "This standard requires the plaintiff to allege 'more than a sheer possibility that a defendant has

acted unlawfully.'" *In re SuperValu, Inc.*, 925 F.3d 955, 962 (8th Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678).

"[A]lthough a complaint need not contain 'detailed factual allegations,' it must contain facts with enough specificity 'to raise a right to relief above the speculative level.'" *United States ex rel. Raynor v. Nat'l Rural Utils. Coop. Fin., Corp.*, 690 F.3d 951, 955 (8th Cir. 2012) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "In deciding a motion to dismiss under Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences most favorably to the complainant." *Raynor*, 690 F.3d at 955.

"In evaluating whether a pro se plaintiff has asserted sufficient facts to state a claim, [courts] hold a pro se complaint, however inartfully pleaded, to less stringent standards than formal pleadings drafted by lawyers." *Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014) (quotation omitted). But, "[a]lthough pro se complaints are to be construed liberally, 'they still must allege sufficient facts to support the claims advanced.'" *Stringer v. St. James R-1 Sch. Dist.*, 446 F.3d 799, 802 (8th Cir. 2006) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)); *accord Gerstner v. Sebig, LLC*, 386 F. App'x 573, 575 (8th Cir. 2010) (per curiam).

### B. Section 1983 Claim

"Section 1983 creates a species of tort liability for the deprivation of any rights, privileges, or immunities secured by the Constitution." *Manuel v. City of Joliet*, 137 S. Ct. 911, 916 (2017) (quotations and citations omitted). "To state a claim under 42 U.S.C. § 1983, a plaintiff must show that he was deprived of a right secured by the Constitution and the laws of the United States and that the deprivation was committed by a person acting under color of state law." *Alexander v. Hedback*, 718 F.3d 762, 765 (8th Cir. 2013); *see* 42 U.S.C. § 1983.

"As a pretrial detainee, [Plaintiff's] right to medical care arises under the Due Process Clause of the Fourteenth Amendment." *Jackson v. Buckman*, 756 F.3d 1060, 1065 (8th Cir. 2014). Although "rooted in the Fourteenth Amendment, [courts] apply the deliberate-indifference standard that governs claims brought by convicted inmates under the Eighth Amendment." *Id.*; *see Johnson v. Leonard*, 929 F.3d 569, 575 (8th Cir. 2019) ("As a pretrial detainee, Johnson is entitled to at least as much protection under the Fourteenth Amendment as under the Eighth Amendment.") (quotation omitted).

The deliberate-indifference standard has both an objective and a subjective component. *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). For the objective component, "the complaint must plead facts sufficient to demonstrate that [the plaintiff] suffered from an objectively serious medical need." *Id.* (quotation omitted). "To be objectively serious, a medical need must have been diagnosed by a physician as requiring treatment or must be so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Id.* (quotation omitted).

8

For the subjective component, the complaint must plead facts sufficient to demonstrate that Defendants "actually knew that [the plaintiff] needed medical care and disregarded a known risk to [the plaintiff's] health." *Id.* at 965 (quotation omitted); *see also Letterman v. Does*, 789 F.3d 856, 862 (8th Cir. 2015) ("Under this subjective prong, the evidence must show that the officers recognized that a substantial risk of harm existed *and* knew that their conduct was inappropriate in light of that risk.") (quotation omitted). "A complaint must allege facts that demonstrate more than negligence, more even than gross negligence." *Barton*, 820 F.3d at 965 (quotation omitted). The subjective component "requires a mental state akin to criminal recklessness." *Id.* (quotation omitted). The requisite "mental state can be inferred, however, from facts that demonstrate that a medical need was obvious and that the [defendant's] response was obviously inadequate." *Id.* (quotation omitted).

Additionally, while a pretrial detainee has a right to *adequate* medical care, he "ha[s] no right to receive a particular or requested course of treatment." *Barr v. Pearson*, 909 F.3d 919, 921 (8th Cir. 2018) (quotation omitted). "Thus, a [pretrial detainee's] mere difference of opinion over matters of expert medical judgment or a course of medical treatment fails to rise to the level of a constitutional violation." *Id.* at 921-22 (quotation omitted).

The County and MEnD Defendants argue Plaintiff has failed to plead sufficient facts showing that he suffered from objectively serious medical needs and they actually knew of, but deliberately disregarded, those needs. According to the County and MEnD Defendants, Plaintiff has not identified what objectively serious medical needs he

9

allegedly suffered from, including whether those medical needs were diagnosed by a physician as requiring treatment or were so obvious that a layperson should have recognized Plaintiff's need for medical attention. They further argue that it cannot plausibly be inferred from the facts alleged in the Verified Complaint that any of them had a sufficiently culpable state of mind, and, other than Hussain, Plaintiff has largely failed to identify their personal involvement in the alleged acts.

It is clear from the Verified Complaint that Plaintiff filed numerous grievances regarding his medical treatment, primarily relating to his medications, blurred vision, and pain. There are, however, few facts connecting these grievances to an objectively serious medical need or indicating how that need was allegedly apparent, whether by a physician's diagnosis that treatment was necessary or the presence of circumstances rendering it so obvious that a layperson would have recognized Plaintiff's need for medical attention. *See Barton*, 820 F.3d at 964-65.

Similarly, the Verified Complaint contains few facts showing how each Defendant was aware of a substantial risk of harm to Plaintiff or "had been exposed to information concerning the risk and thus must have known about it." *Letterman*, 789 F.3d at 862 (quotation omitted); *cf. Blair v. Bowersox*, 929 F.3d 981, 987 (8th Cir. 2019) ("However, constructive knowledge, or the should-have-known standard, is not sufficient to support a finding of deliberate of indifference.") (quotation omitted). For example, it is not clear from the Verified Complaint to whom Plaintiff's grievances were submitted.

And, while deliberate indifference can be manifested "by intentionally denying or delaying access to medical care, or intentionally interfering with treatment or medication

10

that has been prescribed," *Letterman*, 789 F.3d at 862 (quotation omitted), the Verified Complaint does not contain sufficient facts from which it can plausibly be inferred that the concerns voiced in Plaintiff's grievances and any responses thereto were attributable to anything other than a disagreement over Plaintiff's preferred course of treatment.

Moreover, liability under § 1983 is personal. *White v. Jackson*, 865 F.3d 1064, 1081 (8th Cir. 2017). "[A] plaintiff must show each individual defendant's personal involvement in the alleged violation." *Id.*; *see Heartland Acad. Cmty. Church v. Waddle*, 595 F.3d 798, 806 (8th Cir. 2010) ("Section 1983 does not sanction tort by association."). While it seems that Hussain may have been involved in some of Plaintiff's medical treatment, it is not clear from the Verified Complaint what Sherriff Brott, Commander Carr, and VanDerBeek actually did or failed to do that showed deliberate indifference to Plaintiff's medical needs. The Verified Complaint merely concludes that they did. *See Lewis v. City of St. Louis*, 932 F.3d 646, 649 (8th Cir. 2019) ("But, of course, we need not accept legal conclusions couched as factual allegations as true.").

Further, liability under § 1983 "cannot attach to a supervisor merely because a subordinate violated someone's constitutional rights." *Johnson v. City of Ferguson*, 926 F.3d 504, 506 (8th Cir. 2019) (en banc) (quotation omitted); *see also Iqbal*, 556 U.S. at 677 ("[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). Rather, "[a] supervisor may be held liable if a failure to properly supervise and train the offending employee caused a deprivation of constitutional rights." *Perkins v. Hastings*, 915 F.3d 512, 524 (8th Cir. 2019) (quotation omitted). This requires "show[ing] that the supervisor (1) had notice of a pattern of unconstitutional acts

11

committed by subordinates; (2) was deliberately indifferent to or tacitly authorized those acts; and (3) failed to take sufficient remedial action; (4) proximately causing injury to the plaintiff." *Id.* (quotation omitted). As best as this Court is able to tell, Plaintiff appears to be asserting supervisory claims against Sheriff Brott and Commander Carr based on their roles in the management of the Sherburne County Jail. But again, the Verified Complaint does not contain facts from which it could be plausibly inferred that Sheriff Brott or Commander failed to properly train or supervise employees of the Sherburne County Jail.

In opposition to Defendants' motions, Plaintiff directs the Court to the more than 100 pages of grievances, responses to those grievances, and medical records he has submitted, asserting that these "exhibits set forth properly diagnosed concrete injuries, the causes of such injuries, and the prescribed courses of treatment." Pl.'s Opp'n at 3. Plaintiff additionally asserts that his "pleas concerning worsening vision, and voicing his fear of permanent vision loss, . . . identifies a 'serious medical need.'" Pl.'s Opp'n at 4.

The Court is mindful that pro se litigants are held to less stringent pleading standards than attorneys. *See, e.g.*, *Jackson*, 747 F.3d at 541; *Stone*, 364 F.3d at 914. Plaintiff is also correct that courts may consider exhibits attached to and documents embraced by a complaint on a motion to dismiss. *See, e.g.*, *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012); *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012). But, it remains Plaintiff's burden to identify and allege sufficient facts to support his claim for deliberate indifference. *See, e.g.*,

12

*Gerstner*, 386 F. App'x at 575; *Stringer*, 446 F.3d at 802. Plaintiff cannot just point to documents where those facts might be found.

Nor is it the Court's function to sift through Plaintiff's voluminous papers and figure out what facts might be relevant. *See Gurman v. Metro Hous. & Redevelopment Auth.*, 842 F. Supp. 2d 1151, 1153 (D. Minn. 2011). "In granting the deference owed to pro se parties, [the court may not] assume the role of advocate for the pro se litigant." *Machen v. Iverson*, No. 11-cv-1557 DWF/JSM, 2012 WL 566977, at *15 (D. Minn. Jan. 23, 2012) (quotation omitted), *adopting report and recommendation*, 2012 WL 567128 (D. Minn. Feb. 21, 2012); *see Bracken v. Dormire*, 247 F.3d 699, 705 (8th Cir. 2001) (Arnold, J., dissenting) ("Of course, a *pro se* pleading is not a magic hat out of which a court may pull any claim it thinks should have been advanced."). Plaintiff is essentially asking the Court to assume such a role here.

Lastly, the Court recognizes that Plaintiff has included a number of new factual allegations in his written submissions. These allegations provide greater detail regarding Plaintiff's medical needs, how Defendants were aware of those needs, the events in question, and Defendants' personal involvement. But, "it is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss." *Morgan Distrib. Co. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989) (quotation omitted); *see Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019) ("While Glick presented additional facts in his oppositions to the motions to dismiss and now presents additional facts on appeal, those factual allegations were not included in his amended complaint and, thus, cannot be considered on a motion to dismiss."). "To hold otherwise

would mean that a party could unilaterally amend a complaint at will . . . ." *Morgan Distrib. Co.*, 868 F.2d at 995. As Plaintiff's written submissions demonstrate, this sort of approach creates a moving target.

Based on his numerous grievances, it can plausibly be inferred from the Verified Complaint that Plaintiff disagreed with the course of medical treatment (or lack thereof) that he received while at the Sherburne County Jail. But, such disagreement is not enough to rise to the level of a constitutional violation. *Barr*, 909 F.3d 921-22. The Verified Complaint is little more than a chronology of Plaintiff's grievances, threadbare recitals of the elements of a claim for deliberate indifference, and conclusory statements regarding Defendants' awareness and involvement. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. The Court is left to speculate as to (1) the nature and severity of the medical needs Defendants purportedly disregarded; (2) the circumstances in which each Defendant became aware of the substantial risk of harm to Plaintiff or must have known about it based on his or her exposure to information concerning the risk; and (3) what each Defendant supposedly did or failed to do in the face of that knowledge that demonstrated deliberate disregard of the substantial risk of harm to Plaintiff's health. *See Letterman*, 789 F.3d at 862. Accordingly, the Court concludes that Plaintiff has failed to state a claim for deliberate indifference to his medical needs against both the County and MEnD Defendants.

### C. Medical Malpractice

Under Minnesota law, a medical malpractice claim requires the plaintiff to "establish (1) the standard of care recognized by the medical community as applicable to

the particular defendant's conduct, (2) that the defendant in fact departed from that standard, and (3) that the defendant's departure from the standard was a direct cause of the plaintiff[']s injuries." *Senty-Haugen v. Goodno*, 462 F.3d 876, 891 (8th Cir. 2006) (quotation omitted); *see also Dickhoff ex rel. Dickhoff v. Green*, 836 N.W.2d 321, 329 (Minn. 2013).

The medical malpractice claim is asserted only against the MEnD Defendants. With respect to this claim, the Verified Complaint does nothing more than incorporate by reference the prior factual allegations regarding Plaintiff's submission of grievances and summarily conclude that "[t]he conduct alleged in . . . [these paragraphs] constitutes the state tort of medical malpractice." Verified Compl. ¶ 31. There are no facts pleaded with respect to the applicable standard of care or how any of the MEnD Defendants departed from that standard of care, let alone how any purported departure injured Plaintiff.[4] Accordingly, the Court likewise concludes that Plaintiff has failed to state a claim for medical malpractice against the MEnD Defendants.

---

[4] Nor was the Verified Complaint accompanied by an affidavit of expert review. *See* Minn. Stat. § 145.682, subd. 2. Minnesota law requires that an affidavit of expert review be served with the complaint, stating that "the facts of the case have been reviewed . . . with an expert whose qualifications provide a reasonable expectation that the expert's opinions could be admissible at trial and that, in the opinion of this expert, one or more defendants deviated from the applicable standard of care and by that action caused injury to the plaintiff." *Id.*, subd. 3; *see, e.g.*, *Vogel v. Turner*, No. 11-cv-0446 (PJS/JJG), 2013 WL 358874, at *6 (D. Minn. Jan. 8, 2013) ("Included in Minnesota's law is the requirement that a plaintiff asserting a medical malpractice claim provide an affidavit of expert review."), *adopting report and recommendation*, 2013 WL 359072 (D. Minn. Jan. 30, 2013). "The only exception to the affidavit requirement allows a plaintiff to forgo seeking an expert in exceptional cases where expert testimony would not be required to establish medical malpractice because the act or omission complained of is within the general knowledge and experience of lay persons." *Vogel*, 2013 WL 358874, at *6 (quotation omitted). This exception applies "only rarely." *Mercer v. Andersen*, 715 N.W.2d 114, 122 (Minn. Ct. App. 2006). Plaintiff's pro se status does not excuse him from complying with the affidavit requirement. Minn. Stat. § 145.682, subd. 5 ("If the plaintiff is acting pro se, the plaintiff shall sign the affidavit or answers to interrogatories referred to in this section and is bound by those provisions as if represented by an attorney."); *Batista v. United States*, No. 16-cv-794 (PJS/DTS), 2017 WL 3190648, at *10 (D. Minn. June 9, 2017), *adopting report and recommendation*, 2017 WL 3190563 (D. Minn. July 26, 2017). Failure to comply with the affidavit requirement "within 60 days after demand for the affidavit results, upon motion, in mandatory dismissal with prejudice of each cause of action as to which expert testimony is necessary to establish a prima facie case." Minn. Stat. § 145.682, subd. 6(a).

### D. Dismissal Without Prejudice & Opportunity to File Amended Complaint

For the reasons stated above, the Court concludes that Plaintiff has failed to state a claim for which relief can be granted against both the County and MEnD Defendants, and therefore recommends that their motions be granted and the Verified Complaint[5] be dismissed without prejudice.[6]

Given Plaintiff's status as a pro se litigant, the amount of information he has provided in support of his claims, and his efforts—albeit procedurally improper—to correct some of the pleading deficiencies, the Court further recommends that Plaintiff be given 30 days from the date that the district court rules on this Report and Recommendation to file an amended complaint, and, in the event Plaintiff fails to file an amended complaint within the specified timeframe, that final judgment be entered disposing of this case.

In closing, should Plaintiff elect to file an amended complaint if given the opportunity, Plaintiff should bear in mind that any amended complaint must be an entirely new pleading. It cannot be a supplement to the Verified Complaint. The amended complaint must also adequately remedy the numerous deficiencies set forth in this Report and Recommendation. Should any amended complaint fail to remedy these

---

[5] *See supra* n.3.

[6] The County Defendants request that any dismissal be *with* prejudice. "A district court, in its discretion, may dismiss a pleading for failure to state a claim with or without prejudice." *Paisley Park Enters., Inc. v. Boxill*, 361 F. Supp. 3d 869, 880 n.7 (D. Minn. 2019) (citing *Orr v. Clements*, 688 F.3d 463, 465 (8th Cir. 2012)). "Dismissal with prejudice may be appropriate, for example, when a plaintiff repeatedly fails to comply with court orders or when amending a complaint would not cure its deficiencies." *Daywitt v. Moser*, No. 17-cv-1720 (WMW/LIB), 2019 WL 4387359, at *4 n.5 (D. Minn. Sept. 13, 2019) (citing *Pet Quarters, Inc. v. Depository Tr. & Clearing Corp.*, 559 F.3d 772, 782 (8th Cir. 2009); *Doe v. Cassel*, 403 F.3d 986, 989-90 (8th Cir. 2005)). Here, "the Court cannot conclude that amendment of the complaint would be futile," *id.*, and therefore has recommended dismissal without prejudice.

deficiencies adequately, the Court would recommend that the amended complaint and this action be dismissed and would consider whether the dismissal should be with prejudice.

[Continued on next page.]

# IV. RECOMMENDATION

Based upon the record, memoranda, and the proceedings herein, and for the reasons stated above, **IT IS HEREBY RECOMMENDED** that:

1. The County Defendants' Motion to Dismiss, ECF No. 25, be **GRANTED**.

2. The MEnD Defendants' Motion to Dismiss, ECF No. 31, be **GRANTED**.

3. The Verified Complaint[7] be **DISMISSED WITHOUT PREJUDICE**.

4. Plaintiff be given 30 days from the date that the district court rules on this Report and Recommendation to file an amended complaint consistent with the requirements set forth above.

5. In the event Plaintiff fails to file an amended complaint within the specified timeframe, final judgment be entered disposing of this case.

Dated: July  22  , 2020                         *s/ Tony N. Leung*
                                                Tony N. Leung
                                                United States Magistrate Judge
                                                District of Minnesota

                                                *Thompson v. Hussain et al.*
                                                Case No. 19-cv-1559 (DSD/TNL)

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

---

[7] *See supra* n.3.